1

2

3

4

5

6

7

8

9

10

11

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

12

GCUBE INSURANCE SERVICES, INC.,          CIV. NO. 2:12-1163 WBS CKD
a California corporation,

              Plaintiff,

         v.                              MEMORANDUM AND ORDER RE:
                                         MOTION FOR SUMMARY JUDGMENT
LINDSAY CORPORATION, a Delaware          AND CONTINUING PRETRIAL
corporation, and DOES 1 through          CONFERENCE AND TRIAL DATES
10, inclusive,

              Defendant.

LINDSAY CORPORATION,

                   Third-party
                   Plaintiff,
         v.

AREVA SOLAR, INC.; AUSRA CA I,
LLC now known as AREVA SOLAR CA
I, LLC; SPECIAL SERVICES
CONTRACTORS, INC.; LLOYD W.
AUBRY CO., INC.; MATERIAL
INTEGRITY SOLUTIONS, INC.; and
ZOES 1 through 50, inclusive,

                   Third-Party
                   Defendants.

1

1

2

----ooOoo----

3

4              Plaintiff GCube Insurance Services, Inc. brought this

5       subrogation action against defendant Lindsay Corporation arising

6       out of defendant's provision of welds for a construction project.

7       Defendant now moves for summary judgment on all claims pursuant

8       to Federal Rule of Civil Procedure 56.

I.   Factual Background

9

10             In March 2009, Ausra, Inc. ("Ausra") took out a policy

11      of insurance ("the Policy") to insure construction, erection, and

12      operations activities at its Kimberlina solar power generation

13      facility in Bakersfield, California.[1]  (Dunkel Decl. Ex. C

14      (Docket No. 60-1).)  The policy was issued by certain

15      Underwriters at Lloyd's, London (the "Lloyd's Underwriters"), and

16      names GCube Underwriting Limited ("GCube Underwriting") as the

17      correspondent authorized to act on behalf of the Lloyd's

18      Underwriters.  (Id.)  The relationship between the Lloyd's

19      Underwriters and GCube Underwriting is memorialized in a Bind

20      Agreement that, among other things, grants GCube Underwriting

21      authority to pursue settlement of claims as well as subrogation

22      on behalf of the Lloyd's Underwriters.  (Papazis Decl. Ex. B

23      ("Bind Agreement") at 8-9 (Docket No. 67-3).)

               Neither the Policy nor the Bind Agreement expressly

24      _____

25             [1]   Plaintiff contends that Ausra, Inc. is now known as
        Areva Solar, Inc.  Although it is not clear if defendant contests
26      this assertion, the parties previously disputed this issue as it
        related to defendant's third party complaint.  Because the
27      distinction appears immaterial for the purposes of defendant's
        present motion, the court will refer to the entity as "Ausra"
28      throughout this Order.

                                         2

mention plaintiff, but plaintiff contends that it shares operations with GCube Underwriting and handles the claims adjustment and subrogation process when claims arise in the United States.  (Id. ¶ 2; Munoz Decl. ¶ 6 (Docket No. 67-4).)  Both plaintiff and GCube Underwriting are subsidiaries of Jardine Lloyd Thompson, Limited.  (Id.)

In January 2010, defendant and Ausra agreed for defendant to weld together a number of A-frame supports for the construction of a Solar Steam Generation array ("SSG array").  (Dunkel Decl. Exs. H, I.)  Defendant agreed to provide the welds according to Ausra's specifications and on steel tubes that Ausra supplied, while defendant provided the plates that it welded between the tubes.  (Id. Ex. G (Eberhart Dep.) at 16:22-17:10 (Docket No. 60-1).)  Defendant then delivered the welded A-frame supports to Ausra in Bakersfield, where Ausra was to assemble the SSG array.  (Compl. ¶ 12 (Docket No. 1).)

On May 28, 2010, as Ausra was in the final stages of assembling the SSG array, twenty-four of the twenty-five A-Frame supports buckled at the joints, and the SSG components fell to the ground.  (Id. at ¶¶ 15-16.)  Pursuant to the Policy, the Lloyd's Underwriters subsequently paid Asura's claim of $2,319,172.00.  (Munoz Decl. ¶ 9; id. Ex. B.)

Plaintiff filed its Complaint on April 30, 2012, seeking subrogation and bringing claims for strict products liability and negligence.  (Docket No. 1.)  Defendant filed the present motion for summary judgment on February 21, 2014.  (Docket No. 60.)

3

II.  Discussion

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Alternatively, the moving party can demonstrate that the non-moving party cannot produce evidence to support an essential element upon which it will bear the burden of proof at trial. Id.

Once the moving party meets its initial burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'"  Id. at 324 (quoting then-Fed. R. Civ. P. 56(e)).  To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S.

4

1    at 252.

2        In deciding a summary judgment motion, the court must

3    view the evidence in the light most favorable to the non-moving

4    party and draw all justifiable inferences in its favor.  Id. at

5    255.  "Credibility determinations, the weighing of the evidence,

6    and the drawing of legitimate inferences from the facts are jury

7    functions, not those of a judge . . . ruling on a motion for

8    summary judgment . . . ."  Id.

9        A.   Standing

10       Defendant first moves for summary judgment on the

11   ground that plaintiff lacks standing under the principles of

12   subrogation.  "Subrogation is defined as the substitution of

13   another person in place of the creditor or claimant to whose

14   rights he or she succeeds in relation to the debt or claim."

15   Fireman's Fund Ins. Co. v. Md. Cas. Co., 65 Cal. App. 4th 1279,

16   1291 (1st Dist. 1998).  "In the case of insurance, subrogation

17   takes the form of an insurer's right to be put in the position of

18   the insured in order to pursue recovery from third parties

19   legally responsible to the insured for a loss which the insurer

20   has both insured and paid."  Id. at 1291-92.  "An insurance

21   company plaintiff only has standing to sue as subrogee when it

22   has paid its insured."  HSBC Ins. Ltd. v. Scanwell Container Line

23   Ltd., No. 00-CV-5729, 2001 WL 1875851, at *1 (C.D. Cal. July 25,

24   2001) (citing Smith ex rel. Smith v. Parks Manor, 197 Cal. App.

25   3d 876, 879 (2d Dist. 1988)).

26       Defendant contends that only the Lloyd's Syndicates or

27   GCube Underwriting could be the real party in interest with

28
                                  5

standing to bring this subrogation claim.  (See Def.'s Reply at

7:5-7 (Docket No. 68) ("The Plaintiff in this case could only

have been either GCube Underwriting Limited, as the Coverholder,

or the Syndicates themselves.").)  For its part, plaintiff admits

it did not directly insure or issue payment to Ausra.  (Pl.'s

Opp'n at 13:4-5:13 (Docket No. 67).)  Defendant, therefore,

raises a valid concern that plaintiff was not the proper party to

bring this action.  See HSBC Ins. Ltd, 2001 WL 1875851, at *1

(requiring that insurer make payment to insured in order to

assert standing as subrogee).

        However, this concern does not merit summary dismissal

of plaintiff's suit because the proper party may either join or

ratify this action pursuant to Federal Rule of Civil Procedure

17.  Although Rule 17 requires that an action be prosecuted by

the real party in interest, it also mandates that "[t]he court

may not dismiss an action for failure to prosecute in the name of

the real party in interest until, after an objection, a

reasonable time has been allowed for the real party in interest

to ratify, join, or be substituted into the action."  Fed. R.

Civ. P. 17(a)(3).  "A proper ratification pursuant to Rule 17(a)

requires the ratifying party to: 1) authorize continuation of the

action; and 2) agree to be bound by the lawsuit's result."

Mutuelles Unies v. Kroll & Linstrom, 957 F.2d 707, 712 (9th Cir.

1992).

        As defendant concedes that either GCube Underwriting or

the Lloyd's Syndicates is the real party of interest in this

litigation, the court must give either of those entities a

reasonable time to join, ratify, or be substituted into this action before dismissal is appropriate under Rule 17.[2]

Accordingly, the court will deny defendant's motion for summary judgment on the condition that, by April 14, 2014, either GCube Underwriting or the Lloyd's Syndicates joins, ratifies, or is substituted into this action pursuant to Rule 17(a)(3).[3]

B.   Strict Products Liability

Alternatively, defendant moves for summary adjudication on plaintiff's claim for strict products liability on the ground that the welding defendant conducted was either a service or a specially-designed product not marketed or sold to the general public.[4]

The doctrine of strict products liability does not apply "to transactions whose primary objective is obtaining services." Hennigan v. White, 199 Cal. App. 4th 395, 403 (3d Dist. 2011) (quoting Ferrari v. Grand Canyon Dories, 32 Cal.

---

[2]   At oral argument, counsel for defendant contended that Rule 17(a) does not apply here because plaintiff did not make a reasonable mistake as to whether it was the real party in interest. See, e.g., Feist v. Consol. Freightways Corp., 100 F. Supp. 2d 273, 276 (considering "whether or not Plaintiff was acting in good faith when he filed this action in his own name" before allowing substitution of real party in interest). Even assuming it is appropriate to consider this argument without giving plaintiff an opportunity to respond, the court is satisfied that plaintiff acted in good faith in bringing the present action.

[3]   Although defendant focuses on subrogation in its briefs, it also appears to contend that plaintiff lacks standing under Article III. Because defendant does not contend that either GCube Underwriting or the Lloyd's Syndicates would lack standing, this argument would be moot once either of those entities joins, ratifies, or is substituted into this action.

[4]   Separate from its subrogation argument, defendant does not move for summary judgment on plaintiff's negligence claim.

App. 4th 248, 258 (3d Dist. 1995)).  To bring a strict products liability claim, "a plaintiff must show the transaction in which she obtained the product was one in which the transaction's primary objective was to acquire ownership or use of a product, and not one where the primary objective was to obtain a service." Id.

California courts define a product as "a physical article which results from a manufacturing process and is ultimately delivered to a consumer," while a service "is no more than direct human action or human performance."  Pierson v. Sharp Mem'l Hosp., Inc., 216 Cal. App. 3d 340, 345 (4th Dist. 1989). Although a product defect "even if initially latent is ultimately objectively measurable," whether the performance of a service "is defective is judged by what is reasonable under the circumstances and depends upon the actor's skill, judgment, training, knowledge and experience."  Id.

The parties do not cite to any authority holding that welding is definitively a product or a service for purposes of strict products liability.  However, California courts have recognized defects in welds as giving rise to strict products liability claims when those defects appear in a product.  See, e.g., Soule v. Gen. Motors Corp., 8 Cal. 4th 548, 557 (1994) (addressing alleged defect in manufacture of automobile relating to substandard welding); Wimberly v. Derby Cycle Corp., 56 Cal. App. 4th 618, 624 (4th Dist. 1997) (considering strict products liability claim of defective bike assembly partially based on failures during welding process).  In Soule, both parties

8

presented expert testimony relating to the weakness and propriety of the weld.  8 Cal. 4th at 558.  Similarly, in <u>Wimberly</u> the plaintiff's expert testified as to defects created in the product during the welding process.  56 Cal. App. 4th at 624.  Thus, these courts treated welding as containing defects that were, like a product, "ultimately objectively measurable," <u>Pierson</u>, 216 Cal. App. 3d at 345.

Defendant, however, compares itself to the installer of a product, which California courts of appeal have exempted from strict products liability.  For example, in <u>Endicott v. Nissan Motor Corp.</u>, 73 Cal. App. 3d 917, 930 (2d Dist. 1977), the plaintiff, whose seat belt had ruptured during an automobile accident, brought suit against the independent contractor who installed the seatbelt.  The court held that the installer, who installed belts that were supplied by the manufacturer according to the manufacturer's specifications, was a provider of a service and not liable for a product defect.  <u>Id.</u> at 925, 930.  Similarly, a subcontractor who installed a soap dish that it had purchased from another party was not liable under a strict products liability claim when the dish broke.  <u>Monte Vista Dev. Corp. v. Superior Court</u>, 226 Cal. App. 3d 1681, 1684-87 (5th Dist. 1991).

Like the defendants in <u>Endicott</u> and <u>Monte Vista</u>, defendant provided the welds according to Ausra's specifications and on steel tubes that Ausra supplied.  (Eberhart Dep. at 16:22-17:10.)  Here, however, defendant itself provided some of the raw materials in the form of the plates welded between the tubes.

9

(<u>Id.</u>)  Moreover, plaintiff has produced evidence supporting an inference that the parties themselves considered the welds to be a product.  For example, a quotation provided by defendant to Ausra includes terms allowing the buyer "the right to inspect product" both at the point of manufacture and delivery.  (Miles Decl. Ex. B (Docket No. 67-2).)  Further, an employee of defendant discussed in an email a proposal "to build a few of these," (<u>id.</u> Ex. D.), which demonstrates that defendant may have considered the welds to constitute "a physical article which results from a manufacturing process"--that is, a product.  <u>Pierson</u>, 216 Cal. App. 3d at 345.  Thus, plaintiff has raised a disputed issue of material fact as to whether "the transaction's primary objective was to acquire ownership or use of a product, and not one where the primary objective was to obtain a service."  <u>Hennigan</u>, 199 Cal. App. 4th at 403.

Defendant also raises two policy arguments against the imposition of strict products liability here.

Defendant's first policy argument, that the welds were a unique good not subject to strict products liability, is not persuasive.  Strict products liability may still apply to a one-of-a-kind good that was not mass produced if the defendant was in the business of making the good.  <u>See</u> <u>Rawlings v. D.M. Oliver, Inc.</u>, 97 Cal. App. 3d 890, 897-98 (4th Dist. 1979) (holding that uniqueness of product does not prevent strict liability when defendant was "engaged in manufacturing and selling products as part of its full time commercial activity"); <u>see also</u> <u>Oliver v. Superior Court</u>, 211 Cal. App. 3d 86, 89 (4th Dist. 1989) (noting

10

that in Rawlings "[t]he fact a special order was involved which was not sold to the general public did not insulate the manufacturer from strict liability," but refusing to extend liability to case of "occasional" production).  It is undisputed that defendant was in the business of welding.  Thus, the fact that these welds may have been unique and made to Ausra's specifications does not shield defendant from strict products liability.

Defendant's second policy argument--that California courts have never applied strict products liability to construction cases outside the construction of mass-produced homes--is also unpersuasive.  Defendant relies in part on Oliver, but in that case the court held only that mass-produced homes may be subject to strict liability while the "occasional or isolated construction and sale of a residence" is not.  211 Cal. App. 3d at 87-89.  Moreover, while the California Supreme Court more recently held in Jimenez v. Superior Court, 29 Cal. 4th 473, 479 (2002), that manufacturers of component parts installed in mass-produced homes can be subject to strict products liability, that case contained sweeping language applicable to manufacturers and suppliers of component parts in general, see, e.g., id. ("The policies underlying strict products liability in tort . . . are equally applicable to component manufacturers and suppliers.").  The case law, therefore, does not support limiting strict products liability in construction cases to mass-produced homes.

Accordingly, because disputed issues of material fact remain as to whether defendant's welds constituted a product or a

1    service, and policy reasons do not foreclose strict liability

2    here, the court will deny defendant's motion for summary

3    adjudication on plaintiff's strict products liability claim.[5]

4         IT IS THEREFORE ORDERED that defendant's motion for

5    summary judgment be, and the same hereby is, DENIED.

6         As a condition to this Order, either GCube Underwriting

7    or the Lloyd's Syndicates must join, ratify, or be substituted

8    into this action by April 14, 2014.

9         IT IS FURTHER ORDERED that the Final Pretrial

10   Conference, previously scheduled for April 14, 2014, is hereby

11   continued to May 27, 2014, at 2:00 p.m.; and the trial date is

12   continued to July 15, 2014 at 9:00 a.m.

13   Dated:  March 25, 2014

14

15                                   WILLIAM B. SHUBB
                                     UNITED STATES DISTRICT JUDGE
16

17

18

19

20

21

22

23

_____

24        [5]   In its Reply brief, defendant cites to Kaiser Steel
     Corp. v. Westinghouse Elec. Corp., 55 Cal. App. 3d 737, 748 (2d
25   Dist. 1976), which held that strict products liability does not
     apply in certain commercial contexts.  (Def.'s Reply at 12:2.)
26   However, because defendant raised this argument for the first
     time in its Reply brief, did not address it at oral argument, and
27   did not develop any facts to support it, this contention cannot
     serve as the basis for summary adjudication here.
28
                                12